<table>
<tr><td colspan="3" align="center">Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL VII</td></tr>
<tr>
<td>MUNICIPIO DE CAYEY, REPRESENTADO POR HON. ROLANDO ORTIZ VELÁZQUEZ<br><br>Apelado<br><br><br>V.<br><br>GLORIA CRUZ RÍOS, JOSÉ CARLOS COLÓN CRUZ, AISSA MARÍA COLÓN CRUZ Y OTROS<br><br>Apelantes</td>
<td>TA2025AP00471<br>TA2025AP00473</td>
<td>*Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br><br>Civil Núm.<br>CG2025CV02853<br>CG2025CV02872<br><br><br>Sobre:<br>Expropiación Forzosa</td>
</tr>
</table>

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Juez Barresi Ramos y la Jueza Santiago Calderón.

Rodríguez Casillas, juez ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 27 de marzo de 2026.

Comparecen mediante un recurso de apelación las partes con interés, Sr. José Carlos Colón Cruz y la Sra. Aissa María Colón Cruz (en conjunto, "señores Colón Cruz" o "parte apelante"), y nos solicitan que revisemos la *Sentencia Final* dictada y notificada el 23 de septiembre de 2025 por el Tribunal de Primera Instancia, Sala Superior de Caguas (en adelante, "tribunal de instancia" o "TPI") en los casos CG2025CV02853 y CG2025CV02872.[1] Mediante estas, el tribunal de instancia ordenó el archivo de las reclamaciones, por no existir una reclamación que ameritara la concesión de un remedio.

Por los fundamentos que expondremos a continuación, **revocamos** la *Sentencia Final* apelada.

---

[1] Entrada Núm. 29 del caso CG2025CV02853 en el Sistema Unificado de Manejo y Administración de Casos (en adelante, "SUMAC") y Entrada Núm. 30 del caso CG2025CV02872.

**-I-**

El caso de autos se originó el **19 de agosto de 2025**, ocasión en que el Municipio de Cayey (en adelante, "Municipio" o "parte apelada") instó una *Petición* sobre expropiación forzosa para la "[a]dquisición en pleno dominio de 5,541.8538 metros cuadrados de terreno localizados en el Solar "1" PR-1 Bo. Mat[ó]n Arriba en la municipalidad de Cayey, Puerto Rico" (en adelante, "Solar 1")[2] y la "[a]dquisición en pleno dominio de 696.3911 metros cuadrados de terreno localizados en el Solar "F" PR-1 Bo. Mat[ó]n Arriba en la municipalidad de Cayey, Puerto Rico" (en adelante, "Solar F").[3] Incluyó como parte interesada a la Sra. Gloria Cruz Ríos, la comunidad de bienes compuesta por los señores Colón Cruz y el CRIM.[4] Además, detalló que interesaba adquirir los terrenos antes descritos con el fin público de construir facilidades deportivas para la ciudadanía. Indicó que, la compensación justa y razonable que se pagaría por la adquisición del **Solar 1** ascendía a $39,500.00 y $27,900.00 por el **Solar F**. Solicitó se declarara *Con Lugar* su petición y: **(1)** se decretara que a partir de la radicación del legajo de expropiación quedó investido con el título de dominio sobre las propiedades antes descritas; **(2)** se ordenara que se inscribiera en el Registro de la Propiedad las propiedades a favor del **Municipio** y; **(3)** se determinara quienes tenían derecho a compensación por la adquisición de la propiedad.[5]

---

[2] Entrada Núm. 1 del caso CG2025CV02853 en SUMAC. *Petición Enmendada* a los efectos de enmendar el Exhibit A; Véase en la Entrada Núm. 14 de SUMAC.

[3] Entrada Núm. 1 del caso CG2025CV02872 en SUMAC. *Petición Enmendada* a los efectos de enmendar el Exhibit A; Véase en la Entrada Núm. 16 de SUMAC.

[4] Posteriormente la Petición fue enmendada mediante *Moción solicitando autorización para presentar Petición enmendada* a los efectos de eliminar a la señora Gloria Cruz Ríos de la reclamación por razón de su fallecimiento. Entrada Núm. 11 del caso CG2025CV02853 en SUMAC y Entrada Núm. 13 del caso CG2025CV02872 en SUMAC.

[5] Para el caso CG2025CV02853 incluyó como anejos los siguientes: EXHIBIT A SOLAR 1 324-063-488-08; Exhibit B Certificación Registral; Exhibit C Mensura; Exhibit D. IV-Solar 1-324-063-488-08- José M. Colón Malav[é]- 5541 MC [Informe de valor]; Exhibit E Ordenanza [Núm. 15-2023-24 del Municipio de Cayey]; Exhibit F Declaraci[ó]n de Adquisici[ó]n; Exhibit G Proyecto Resoluci[ó]n Solar 1 324-063-488-08, Para el caso CG2025CV02872 incluyó como Anejo EXHIBIT A SOLAR F 324-062-488-05; Exhibit B Certificación Registral; Exhibit C Mensura; Exhibit D. IV-Solar F-324-062-488-05- José M. Colón Malav[é]- 5541 MC [Informe

El **19 de agosto de 2025**, el **Municipio** presentó una *Moción de consignación* en la cual alegó haber consignado en el tribunal de instancia la suma de $39,500.00 en concepto de compensación por la adquisición del **Solar 1** y $27,900.00 por la adquisición del **Solar F**.[6]

El **28 de agosto de 2025**, el señor José C. Colón Cruz y otros presentaron su *Contestación a Petición sobre expropiación forzosa*.[7] En esencia, aceptaron las alegaciones de la *Petición*, excepto que las cantidades de $39,500.00 y $27,900.00 representaran la justa compensación de los predios adquiridos.

**Ese mismo día**, el TPI emitió y notificó una *Orden* en la cual instruyó a las partes comenzar el descubrimiento de prueba y señaló la fecha para la Conferencia Inicial.[8]

Posteriormente, el **11 de septiembre de 2025**, los **señores Colón Cruz** radicaron una *Moción en solicitud de término para producir informe de valoración*.[9] Arguyeron haber contratado a un tasador y que este podría completar el trabajo en sesenta (60) días calendario, por lo cual solicitaron se les concediera dicho término. **Ese mismo día**, el TPI emitió una *Orden* en la cual declaró *Ha Lugar* la referida moción.[10]

El **12 de septiembre de 2025**, el **Municipio** presentó una *Moción solicitando Resolución de investidura de título*.[11] Esgrimió haber cumplido con los requisitos estatutarios dispuestos en la *Ley*

---

de valor]; Exhibit E Ordenanza [Núm. 15-2023-24 del Municipio de Cayey]; Exhibit F Declaraci[ó]n de Adquisici[ó]n; Exhibit G Proyecto Resoluci[ó]n Solar F 324-062-488-05.

[6] Entrada Núm. 3 de los casos CG2025CV02853 y CG2025CV02872 en SUMAC.

[7] Entrada Núm. 8 del caso CG2025CV02853 y Entrada Núm. 10 del caso CG2025CV02872 en SUMAC.

[8] Entrada Núm. 10 del caso CG2025CV02853 y Entrada Núm. 12 del caso CG2025CV02872 en SUMAC.

[9] Entrada Núm. 17 del caso CG2025CV02853 y Entrada Núm. 19 del caso CG2025CV02872 en SUMAC.

[10] Entrada Núm. 18 del caso CG2025CV02853 y Entrada Núm. 22 del caso CG2025CV02872 en SUMAC.

[11] Entrada Núm. 19 del caso CG2025CV02853 y Entrada Núm. 23 del caso CG2025CV02872 en SUMAC.

*General de Expropiación Forzosa*,[12] y haber firmado la declaración de adquisición, así como expresar en esta: **(a)** la disposición legal que autoriza la expropiación; **(b)** el uso público que se pretende dar; **(c)** el título o interés que se expropia; **(d)** el valor económico de la propiedad o interés a expropiar; y, **(e)** la disponibilidad de los fondos para la expropiación. Por lo cual, solicitó que, siendo la única controversia el monto de la justa compensación de la propiedad expropiada, se emitiera una Resolución de Investidura de Título a su favor.

El **15 de septiembre de 2025**, el TPI emitió una *Resolución* en la cual determinó que los referidos derechos sobre los predios descritos en las mociones de *Petición* quedaban expropiados e investidos en el **Municipio**, teniendo derecho las partes interesadas a una justa compensación a ser determinada su cuantía mediante sentencia dictada por el tribunal.[13] Así, ordenó al Registro de la Propiedad inscribir los derechos sobre las propiedades a favor de la **parte apelada**.

Posteriormente, el **19 de septiembre de 2025**, el Centro de Recaudación de Ingresos Municipales (en adelante, "CRIM") radicó una *Comparecencia especial para notificar contribuciones adeudadas*.[14] Adujo que las propiedades inmuebles con catastros número 324-063-488-08-000 (**Solar 1**) y 324-062-488-05-000 (**Solar F**) reflejaban una deuda de $23.32 y $6.66 respectivamente. En vista de ello, solicitó se expidieran los cheques a su favor por las cantidades adeudadas.

El **22 de septiembre de 2025**, el TPI dictó una *Orden* en la cual declaró *Ha Lugar* las mociones de comparecencia especial

---

[12] *Ley General de Expropiación Forzosa* de 12 de marzo de 1903, según enmendada, 32 LPRA sec. 2901 *et seq.*
[13] Entrada Núm. 20 del caso CG2025CV02853 y Entrada Núm. 24 del caso CG2025CV02872 en SUMAC. La notificación de la *Resolución* fue efectuada al día siguiente.
[14] Entrada Núm. 21 del caso CG2025CV02853 y Entrada Núm. 25 del caso CG2025CV02872 en SUMAC.

radicadas por el **CRIM**.[15] Además, ordenó a los beneficiarios proveer el seguro social mediante el Formulario OAT-229 sobre Información de (de la) Depositante o Beneficiario(a) de Fondos bajo la Custodia del Tribunal, en un término de diez (10) días. Advirtió que, de no cumplir con lo ordenado, los intereses correspondientes a su pago serían retenidos y posteriormente remitidos al Departamento de Hacienda como Saldos Inactivos.

El **22 y 23 de septiembre de 2025**, los **señores Colón Cruz** sometieron una *Moción de retiro de fondos bajo protesta*.[16] En esta expresaron no estar de acuerdo con la determinación de la justa compensación realizada por el **Municipio**, por lo cual procederían a retirar las sumas consignadas bajo protesta.

Así pues, el **22 de septiembre de 2025**, el TPI dictó una *Orden* en la cual determinó lo siguiente:[17]

> DE RETIRAR LA CUATÍA, LA MISMA SE ENTEDERÁ COMO ACEPTADA, SEGÚN DISPONE LA LEY. TENGA LA PARTE DEMANDADA 5 DIAS PARA INFORMAR SI AÚN ASÍ DESEA EL RETIRO FONDOS.

**Ese mismo día**, los **señores Colón Cruz** radicaron una *Moción en cumplimiento de Orden, sobre retiro de fondos bajo protesta*.[18] Alegaron que no se debía concluir que la solicitud de retiro de fondos bajo protesta implicaba un allanamiento de su parte, a lo consignado por el **Municipio** como justa compensación, sino todo lo contrario. Fundamentaron que el derecho a la justa compensación no se limitaba a retirar los fondos consignados, sino a formular alegación respecto a ella. Señalaron que sería un grave error de derecho obligar a una parte con interés a renunciar a una garantía constitucional para conservar otra, puesto que no era incompatible cuestionar los fondos consignados y el retiro de dicho

---

[15] Entrada Núm. 23 del caso CG2025CV02853 y Entrada Núm. 27 del caso CG2025CV02872 en SUMAC.

[16] Entrada Núm. 24 del caso CG2025CV02853 y Entrada Núm. 28 del caso CG2025CV02872 en SUMAC, respectivamente.

[17] Entrada Núm. 25 del caso CG2025CV02853 en SUMAC.

[18] Entrada Núm. 26 del caso CG2025CV02853 en SUMAC.

dinero. En fin, reiteraron que no se allanaban a la determinación de justa compensación alegada por la **parte apelada**.

El **23 de septiembre de 2025**, el tribunal de instancia emitió una *Orden*, en la cual concedió el retiro de los fondos consignados más los intereses generados.[19] En la **misma fecha**, el TPI dictó la *Sentencia Final* apelada. Allí, ordenó el archivo de las reclamaciones, por no existir una reclamación que ameritara la concesión de un remedio y concedió la titularidad de los inmuebles en controversia al **Municipio**.[20]

En desacuerdo, el **26 de septiembre de 2025**, los **señores Colón Cruz** radicaron una *Moción de reconsideración de sentencia final*.[21] Esgrimieron que la *Sentencia Final* de referencia era contraria a derecho y que, aunque el retiro podía implicar la renuncia a cuestionar el fin público de la expropiación, no extinguía el derecho constitucional a impugnar la cuantía de la justa compensación. Solicitaron al tribunal que reconsiderara su determinación y ordenara la continuación de los procedimientos para así dirimirse el justo valor de la propiedad.

No obstante, el **27 de septiembre de 2025**,[22] el TPI emitió una *Orden* en la cual declaró *No Ha Lugar* la moción de reconsideración presentada por los **señores Colón Cruz**.[23]

Inconformes, el **23 de octubre de 2025**, los **señores Colón Cruz** instaron un recurso de apelación y señalaron la comisión de los siguientes errores:

> 1. Erró el TPI al dictar Sentencia Final en la que dispuso que el retiro de fondos, bajo protesta, equivale a la aceptación de la compensación consignada por la parte peticionaria en una expropiación, coartando el derecho constitucional

---

[19] Entrada Núm. 28 del caso CG2025CV02853 y Entrada Núm. 29 del caso CG2025CV02872 en SUMAC.
[20] Entrada Núm. 29 del caso CG2025CV02853 y Entrada Núm. 30 del caso CG2025CV02872 en SUMAC.
[21] Entrada Núm. 32 del caso CG2025CV02853 y Entrada Núm. 33 del caso CG2025CV02872 en SUMAC.
[22] Notificada al día siguiente.
[23] Entrada Núm. 33 del caso CG2025CV02853 y Entrada Núm. 34 del caso CG2025CV02872 en SUMAC.

de la parte interesada a reclamar una suma mayor por concepto de justa compensación en abierta contravención a la Constitución, la Sección 2.018(11) del Código Municipal de 2020, y las Reglas 58.4, 58.5 y 58.9 de Procedimiento Civil porque "[e]l retiro de los fondos consignados de forma alguna constituye una aceptación del valor o los daños estimados por el Estado.[...] [i]ndependientemente del hecho de que haya retirado o no dicha suma [consignada], siempre subsistirá su derecho constitucional a impugnar la justa compensación". Véase, C. Torres Torres, La Expropiación Forzosa en Puerto Rico, First Book Publishing of P.R, 1era Ed., 2002, págs. 57-58.

2. Erró el TPI al dictar Sentencia Final haciendo total abstracción de los formularios provistos por el Poder Judicial en la Secretaría para el retiro de fondos en casos de expropiación forzosa, formularios que contradicen el dictamen apelado y confirman la posición de los Apelantes.

3. Erró el TPI al abdicar su función judicial, de naturaleza constitucional, de determinar la justa compensación.

El **28 de octubre de 2025**, dictamos una *Resolución* en la que concedimos al Municipio (parte apelada) y al Centro de Recaudación de Ingresos Municipales (parte con interés) un plazo de quince (15) días para presentar su oposición. Además, ordenamos la consolidación de los casos **TA2025AP00471** y **TA2025AP00473**, en virtud de la Regla 80.1 del Reglamento del Tribunal de Apelaciones.

El **24 de noviembre de 2025**, los **señores Colón Cruz** radicaron una *Segunda solicitud de toma de conocimiento judicial y otros extremos*.

El **1 de diciembre de 2025**, dictamos una *Resolución* en la cual dimos por presentada la referida moción.

El **12 de diciembre de 2025**, transcurrido el término concedido al **Municipio** y al **CRIM** para presentar su oposición al recurso incoado, dimos por sometido el recurso para la consideración del Panel, sin el beneficio de sus comparecencias.

**-II-**

**-A-**

Estamos consciente que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto.[24]

La citada norma de deferencia también es aplicable a las *decisiones discrecionales* de los tribunales de instancia. En cuanto a este particular, nuestro Alto Foro ha expresado lo siguiente:

> No hemos de interferir con los tribunales de instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último **(1)** actuó con prejuicio o parcialidad, **(2)** incurrió en un craso abuso de discreción, o **(3)** se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[25]

Lo importante al momento de ejercer la función revisora es determinar cuándo un tribunal ha abusado de su discreción, ello, no constituye una tarea fácil.[26]

Por lo tanto, para realizarla adecuadamente nuestro Tribunal Supremo nos ha indicado que el adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad.[27]

**-B-**

El derecho fundamental a disfrutar de la propiedad privada es uno expresamente reconocido en la Constitución del Estado Libre Asociado de Puerto Rico (en adelante, "Constitución de Puerto Rico").[28] Ahora, en repetidas ocasiones se ha aclarado que no es un derecho absoluto, pues está sujeto al poder inherente del Estado de establecer restricciones sobre la propiedad de los ciudadanos. A

---

[24] *Coop. Seguros Múltiples de PR v. Lugo*, 136 DPR 203, 208 (1994).
[25] *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).
[26] *Íd.*
[27] *Íd.*
[28] Art. II, Sec. 7, *Constitución del Estado Libre Asociado Puerto Rico*, LPRA, Tomo 1. En lo pertinente, dispone: *Se reconoce como derecho fundamental del ser humano el derecho a la vida, a la libertad **y al disfrute de la propiedad**. No existirá la pena de muerte. Ninguna persona será privada de su libertad **o propiedad** sin debido proceso de ley, ni se negará a persona alguna en Puerto Rico la igual protección de las leyes. No se aprobarán leyes que menoscaben las obligaciones contractuales. **Las leyes determinarán un mínimo de propiedad y pertenencias no sujetas a embargo**.*

través del poder inherente, el Estado tiene facultad para adquirir la titularidad de bienes privados a través de la expropiación forzosa, o también conocida como dominio eminente.[29]

No obstante, al examinar el Art. II, Sec. 9 de la Constitución de Puerto Rico, encontramos que limita la facultad del Estado al garantizarle a la persona que: *"[n]o se tomará o perjudicará la propiedad privada para uso público a no ser mediante el pago de una justa compensación y de acuerdo con la forma provista por ley"*.[30] La citada protección constitucional cobra efectividad en la Ley de Expropiación Forzosa,[31] y la Regla 58 de Procedimiento Civil.[32] Conforme a la Ley de Expropiación Forzosa, toda acción o procedimiento de expropiación forzosa iniciado por el Estado deberá tener un fin y aprovechamiento público.

Tales procedimientos requieren la presentación de una demanda o petición en el tribunal para comenzar el procedimiento judicial de expropiación[33]. Junto a la petición se deberá presentar un legajo de expropiación que incluye —entre otros documentos— una declaración de adquisición y entrega material de la propiedad[34]. Si la declaración cumple con todos los requisitos dispuestos en la Ley de Expropiación Forzosa y se deposita en el tribunal la compensación estimada, el título de dominio quedará entonces investido en la entidad que solicitó la expropiación.[35]

A pesar de que el procedimiento de expropiación es uno de naturaleza *in rem*, al inicio del pleito el Estado tendrá que acumular

---

[29] *Mun. De Guaynabo v. Adquisición M2*, 180 DPR 206, 216 (2010).

[30] Art. II, Sec. 9, *Constitución del Estado Libre Asociado Puerto Rico*, LPRA, Tomo 1.

[31] *Ley General de Expropiación Forzosa* de 12 de marzo de 1903, según enmendada, 32 LPRA sec. 2901 *et seq.*

[32] *Reglas de Procedimiento Civil de Puerto Rico*, 32 LPRA Ap. V, R. 58.

[33] *Ley General de Expropiación Forzosa, supra*, 32 LPRA sec. 2905; *Reglas de Procedimiento Civil de Puerto Rico, supra*, R. 58.3. Ver, además, *Estado Libre Asociado de Puerto Rico v. El Ojo de Agua Development, Inc.*, 205 DPR 502, 519 (2020); *Mun. de Guaynabo v Adquisición M2*, 180 DPR 206, 217 (2010).

[34] *Reglas de Procedimiento Civil de Puerto Rico, supra*, R. 58.3(c); *ACT v. Iñesta*, 165 DPR 891, 902 (2005).

[35] 32 LPRA sec. 2907

como demandados a las personas que tengan un interés en la propiedad[36]. Es decir, antes de celebrarse vista sobre la justa compensación el Estado tendrá que traer al pleito aquellas personas con interés sobre la propiedad que se conozcan, luego de realizar diligencias razonables en el Registro de la Propiedad.[37]

Cuando el titular del dominio sea debidamente notificado, este tendrá derecho a presentar sus defensas y objeciones tanto al carácter público del uso a que se destinará la propiedad, como a la cuantía consignada como justa compensación.[38]

Es decir, le corresponde al dueño o titular de la propiedad impugnar la cantidad depositada como justa compensación y presentar la evidencia correspondiente sobre el valor en el mercado del inmueble expropiado.[39] Así pues, **cuando la oposición de la parte demandada en un pleito de expropiación forzosa se circunscriba a su inconformidad con la compensación ofrecida por el Gobierno, el peso de la prueba se invertirá, siendo entonces el dueño del bien el llamado a demostrar su derecho a obtener una suma mayor**.[40]

### -III-

De entrada, surge de los hechos procesales elaborados en esta *Sentencia* que, el **11 de septiembre de 2025**, la **parte apelante** solicitó al TPI un término de sesenta (60) días calendario para radicar un Informe de Valoración de las Propiedades Expropiadas y ese mismo día fue declarado *Ha Lugar*.[41] No obstante, once (11) días posterior a ello, y sin haber transcurrido el término concedido de sesenta (60) días, el tribunal de instancia ordenó a los **señores**

---

[36] *Mun. de Guaynabo v Adquisición M2, supra*, a la pág. 218.
[37] *Íd.*; *ACT v. Iñesta, supra*, a la pág. 904.
[38] *Mun. de Guaynabo v Adquisición M2, supra*, a la pág. 218. *ACT v.780.6141 m2*, 165 DPR 121, 133 (2005).
[39] *Íd.*
[40] *Estado Libre Asociado de Puerto Rico v. El Ojo de Agua Development, Inc.*, *supra*, a la pág. 520. Énfasis nuestro.
[41] Entrada Núm. 17-18 del caso CG2025CV02853 y Entrada Núm. 19 y 22 del caso CG2025CV02872 en SUMAC.

**Colón Cruz** proveer su seguro social mediante el Formulario OAT-229 en un término de diez (10) días.[42] Advirtió que, de no cumplir con lo ordenado, los intereses correspondientes a su pago serían retenidos y posteriormente remitidos al Departamento de Hacienda como Saldos Inactivos.

En respuesta, los **señores Colón Cruz** expresaron no estar de acuerdo con la determinación de la justa compensación realizada por el **Municipio**, por lo cual, retirarían las sumas consignadas bajo protesta.[43] Sin embargo, el TPI determinó que, de retirar la partida monetaria, la misma se entendería como aceptada.[44] Nuevamente, la **parte apelante** reiteró su posición al respecto y procedió a retirar de los fondos.[45] En consecuencia, el tribunal de instancia dictó la *Sentencia Final* apelada en la cual concedió la titularidad de los inmuebles expropiados al **Municipio** y ordenó el archivo de las reclamaciones, por no existir una reclamación que ameritara la concesión de un remedio.[46]

Inconformes, los **señores Colón Cruz** radicaron el recurso de apelación que nos ocupa y alegaron, en esencia, que el tribunal de instancia incidió al determinar que el retiro de fondos bajo protesta equivalía a la aceptación de la compensación consignada por el **Municipio** a raíz de la expropiación. Arguyeron que la sentencia dictada en su día por el TPI era inconstitucional porque les privó de su derecho a la justa compensación por la expropiación de sus propiedades.

---

[42] Entrada Núm. 23 del caso CG2025CV02853 y Entrada Núm. 27 del caso CG2025CV02872 en SUMAC.

[43] Entrada Núm. 24 del caso CG2025CV02853 y Entrada Núm. 28 del caso CG2025CV02872 en SUMAC.

[44] Entrada Núm. 25 del caso CG2025CV02853 en SUMAC.

[45] Entrada Núm. 26 del caso CG2025CV02853 en SUMAC.

[46] Entrada Núm. 29 del caso CG2025CV02853 y Entrada Núm. 30 del caso CG2025CV02872 en SUMAC.

Así, nos corresponde determinar si tal proceder por parte del tribunal de instancia fue conforme a derecho. Resolvemos en la negativa.

**En primer orden**, nuestra Constitución provee para que en casos de expropiación de una propiedad privada para un uso público se pague a la persona perjudicada una justa compensación. De ser impugnada la cuantía consignada, procederá que, conforme al debido proceso de ley, se celebre un juicio en su fondo en el que la parte que lo impugna tenga la oportunidad de pasar prueba respecto a sus alegaciones.

**En segundo orden**, se desprende del expediente ante nos, que al archivar la reclamación, el TPI le negó a los **señores Colón Cruz** la oportunidad de pasar prueba y evidenciar en juicio sus alegaciones con respecto a la justa compensación por la expropiación de sus propiedades. Ello puesto que erróneamente determinó que, el retirar los fondos consignados en el tribunal equivalía a una aceptación de la compensación depositada. Corresponde pues, que ordenemos al TPI a celebrar el juicio en su fondo y considerar evidencia de ambas partes, para dirimir si la partida consignada en el tribunal constituye una justa compensación por las propiedades expropiadas.

### -IV-

Por los fundamentos antes expuestos, **revocamos** la *Sentencia Final* apelada. En consecuencia, se devuelve el caso al tribunal de instancia para la continuación de los procedimientos aquí ordenados.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones